**AFFIRMED and Opinion Filed November 22, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00277-CV

### NEAL ROUZIER, M.D., Appellant
### V.
### BIOTE MEDICAL, LLC, Appellee

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-09135**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Reichek

This is an interlocutory appeal from the trial court's order denying Neal Rouzier, M.D.'s

motion to dismiss BioTE Medical, LLC's claims under the Texas Citizen's Participation Act

(TCPA).[1] Rouzier brings six issues contending that, (1) he established the TCPA applied to the

claims asserted against him, (2) BioTE failed to prove the commercial speech exemption to the

TCPA applied, (3) BioTE failed to present clear and specific evidence supporting its causes of

action, (4) BioTE specifically failed to provide evidence of causation and damages, (5) BioTE's

---

[1] The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687. Because this lawsuit was filed before September 1, 2019, the law in effect before September 1 applies. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500. All citations to the TCPA are to the version before the 2019 amendments took effect.

claims are preempted by the Texas Uniform Trade Secret Act (TUTSA), and (6) the trial court erred in failing to rule on his objections to BioTE's evidence submitted in response to the motion to dismiss. We affirm the trial court's judgment.

**Factual Background**

BioTE brought this suit against Rouzier asserting claims for breach of fiduciary duty, misappropriation of trade secrets, and common law misappropriation. According to its original petition, BioTE is in the business of hormone replacement therapy with a focus on licensing its products, systems, and software to physicians and physician groups across the United States. BioTE asserted that Rouzier began working with the company as a faculty member training doctors and their staff on BioTE's products, policies, and procedures. Rouzier was eventually promoted to BioTE's advisory board. BioTE stated that, during Rouzier's tenure with the company, BioTE provided Rouzier with confidential and proprietary information.

Sometime in 2018, Rouzier ceased working for BioTE and BioTE asserts Rouzier was "lured away by the company's competitor, EvexiPEL." At EvexiPEL, Rouzier worked in the same capacity he did at BioTE, which included lecturing to medical providers about hormone therapy. BioTE alleged in its petition that Rouzier and EvexiPEL were using stolen intellectual property to compete with BioTE. Specifically BioTE alleged that Rouzier acted in concert with EvexiPEL to, among other things, (1) "identify, locate, and unlawfully solicit BioTE's contracted physicians and physician groups and persuade them to break their binding and valuable licensing and management contracts," (2) "misappropriate trade secrets," (3) "solicit others to usurp the business opportunities of BioTE," and (4) "engage in, and solicit others to engage in, unfair competition."

Approximately two months after BioTE filed suit, Rouzier filed a motion to dismiss the case in its entirety under the TCPA, contending BioTE's claims were based on, related to, or in

response to his exercise of his rights of free speech and association. Rouzier argued that BioTE's allegations that he made representations regarding the hormone therapy business implicated his freedom of speech and the company's claims that he conspired with EvexiPEL implicated his right of association. Rouzier further argued that BioTE could not meet its burden under the TCPA to establish a prima facie case for each essential element of its claims and the company's misappropriation claims were preempted by TUTSA. Rouzier did not submit any evidence in support of his motion, but instead contended BioTE's pleadings clearly established its suit was covered by the TCPA.

In response to the motion, BioTE requested, and the trial court granted, limited discovery pertaining to the TCPA motion which included a deposition of Rouzier. BioTE then filed its response contending Rouzier had not met his burden to show the TCPA applied and that dismissal was precluded under the TCPA's commercial speech exemption. BioTE also argued it met its burden to provide clear and specific evidence supporting each element of its claims. Attached to BioTE's response were the affidavits of two BioTE executives and excerpts from Rouzier's deposition. Rouzier asserted objections to portions of the affidavit evidence, but the trial court never ruled on the objections. Rouzier also filed a reply attaching the entirety of Rouzier's deposition.

The trial court conducted a hearing on the motion to dismiss on January 16, 2019. By order dated February 8, the court denied the motion and Rouzier brought this appeal.

**Analysis**

## I. The TCPA

In his first two issues, Rouzier contends the trial court erred in denying his motion to dismiss under the TCPA because BioTE's claims against him were based on, related to, and/or in response to his exercise of his rights of free speech and association and the Act's exemption for commercial speech did not apply. The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). We construe the TCPA "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. § 27.011(b); *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

To effectuate the statute's purpose, the Legislature provided a procedure to expedite the dismissal of claims brought to intimidate or silence a defendant's exercise of first amendment rights. *Coleman*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, related to, or in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *Elliott*, 564 S.W.3d at 847.

If the court finds that a motion to dismiss filed under the TCPA is frivolous or intended to delay, the court may award costs and reasonable attorney's fees to the responding party. *Id*. § 27.009(b).

## II. Standard of Review

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.); *see also* TEX. CIV. PRAC. & REM. § 27.006(a). In other words, we read both the petition and the affidavits in the manner most sympathetic to the TCPA's non-applicability. *Riggs & Ray, P.C. v. State*, No. 05-17-00973-CV, 2019 WL 4200009, at *6 (Tex. App.—Dallas Sept. 5, 2019, no pet.) (mem. op). In addition, the trial court may allow specified and limited discovery relevant to the motion. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(b).

## III. Communications with EvexiPEL

The protections of the TCPA are specifically directed at communications. The TCPA defines the exercise of the right of association as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id*. §27.001(2). The exercise of the right of free speech is defined as "a communication made in connection with a matter of public concern." *Id*. §27.001(3).

Rouzier argues that BioTE's claims arise out of alleged communications between him and others at EvexiPEL about providing medical services and, as such, implicate his right of association. As Rouzier concedes, this lawsuit is "derivative of" and "nearly identical" to another suit involving BioTE that was before this Court. *See Forget About It, Inc. v. BioTE Med., LLC*,

No. 05-18-01290-CV, 2019 WL 3798180 (Tex. App.—Dallas Aug. 13, 2019, pet. filed). In *Forget About It*, we concluded that construing the TCPA to protect a "right of association" based on alleged private communications among those working for BioTE's competitors pertaining to the misappropriation and use of BioTE's trade secrets and confidential business information would be "an absurd result that would not further the purpose of the TCPA to curb strategic lawsuits against public participation." *Id*. at *5. We see no distinction between the communications alleged in this case to have occurred between Rouzier and others working for EvexiPEL and the communications among the alleged co-conspirators in *Forget About It*. Absent an intervening change in the law, we follow our own precedent. *Id*.

Our opinion in *Forget About It* similarly disposes of Rouzier's argument that BioTE's claims implicate his right to freedom of speech because his alleged communications with EvexiPEL personnel related to health care which is a matter of public concern. BioTE has alleged that Rouzier joined with EvexiPEL to solicit physicians to break their licensing and management contracts with BioTE and to use BioTE's confidential and proprietary trade secret information to unfairly compete with BioTE. BioTE's chief executive officer elaborated in his affidavit stating that, once Rouzier joined EvexiPEL, the company "immediately became BioTE's biggest competitor."[2] This was due in part to the fact that "as a result of Rouzier's knowledge of BioTE's business," EvexiPEL was able to "avoid all of the startup costs that BioTE had to incur." As stated in *Forget About It*, we "cannot conclude communications discussing allegedly tortious conduct are tangentially related to a matter of public concern simply because the contracts in question belonged to a company in the healthcare industry." *Id*. Furthermore, construing the TCPA to denote that all private business discussions involve a matter of public concern implicating the freedom of

---

[2] None of the affidavit testimony referenced in this opinion was made the subject of the objections filed by Rouzier. Because our resolution of this appeal does not depend upon any testimony to which Rouzier objected, it is unnecessary for us to address Rouzier's contention that the trial court erred in failing to rule on his objections.

–6–

speech simply because the business offers a good, service, or product in the marketplace or is related to health or safety is a potentially absurd result that was not contemplated by the legislature. *Id*. Discussions among alleged tortfeasors to misappropriate confidential and proprietary information are not communications made in connection with a matter of public concern. *Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-00874-CV, 2019 WL 3059884, at *4 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.). Rouzier provided no evidence to show that BioTE's claims were predicated on any communications other than those alleged in the company's petition and elaborated on in the affidavits provided in response to the motion to dismiss. We conclude Rouzier has failed to show that his alleged communications with EvexiPEL personnel are covered by the TCPA.

## IV. Communications with Medical Providers

Although Rouzier asserts in his brief that BioTE's claims arise solely out of his communications with others working for EvexiPEL, he also contends that any communications he had with physicians and their staff about hormone therapy are covered by the TCPA. BioTE responds that it provided clear and convincing evidence to show that Rouzier's communications as a lecturer for EvexiPEL constituted commercial speech which is exempted from the TCPA's protections.

The commercial speech exemption applies when (1) the defendant was primarily engaged in the business of selling or leasing of goods or services, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct was the actual or potential customers of the defendant for the kind of goods or services the defendant provides. *Castleman v. Internet Money Ltd.*, 546 S.W.3d

684, 688 (Tex. 2018). The party asserting that the exemption applies has the burden to prove its application to the communications at issue. *Schimmel v. McGregor*, 438 S.W.3d 847, 857 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). However, an affirmative allegation of facts, with no contrary evidence or denial of those facts, is sufficient to satisfy the elements of the commercial speech exemption. *See Giri v. Estep*, No. 03-17-00759-CV, 2018 WL 2074652, at *4 (Tex. App.— Austin May 4, 2018, pet. denied) (mem. op.).

Reading the pleadings and evidence submitted in the light most favorable to BioTE, as we must, BioTE established the following. In 2016, Rouzier was employed by BioTE as a faculty member and medical advisor. Rouzier also worked part time at a certified BioTE clinic. As a faculty member for BioTE, Rouzier lectured in BioTE's offices to doctors and their staff about hormones and the BioTE hormone therapy system. BioTE's training methodology consisted of not only practice-of medicine techniques, but also how to answer patient questions to market the therapy. After the training courses, doctors would sign up to be providers of the BioTE system. Rouzier additionally trained BioTE liaisons and the liaison training included how to answer doctor questions in order to sell the BioTE system.

In 2018, Rouzier began working for EvexiPEL "in the exact same role and position he had with BioTE." Rouzier gave lectures about hormone therapy and, at the conclusion of those lectures, doctors would sign up to become EvexiPEL providers. The clinic at which Rouzier worked switched from using the BioTE system to using EvexiPEL. BioTE asserts Rouzier was using misappropriated trade secret information to market hormone therapy to practitioners and patients in competition with BioTE. Specifically, BioTE asserts Rouzier was using stolen information to both usurp BioTE's business opportunities with new physician groups and to convince existing BioTE licensed physician groups to break their contracts with BioTE and migrate their business to EvexiPEL.

It is undisputed that EvexiPEL is primarily engaged in the business of selling hormone replacement therapy systems. And, although Rouzier argues he is "merely a lecturer who teaches on the science of hormones," BioTE's pleadings and evidence show that Rouzier's lectures were conducted on behalf of EvexiPEL and for the purpose of marketing the EvexiPEL system to physicians.

Rouzier argues that BioTE has failed to show he was "primarily engaged" in the business of marketing EvexiPEL's system because he testified in his deposition that he also worked part-time at a medical clinic. All of the work performed by Rouzier that was made the basis of BioTE's claims was work he performed as a lecturer and medical advisor for EvexiPEL. Although Rouzier testified he originally ran a "family practice" clinic, he also testified he sold the practice to another physician several years earlier before going to work for BioTE and the current administrator of the clinic was Gunther Mueller, who works for EvexiPEL. There is nothing in the record to show that Rouzier's part-time work at his former clinic was his "primary" occupation or that the work he performed at the clinic was unrelated to his work for EvexiPEL. More importantly, the communications at issue clearly occurred in the context of his work for EvexiPEL and, according to BioTE's pleadings and evidence, were made for the purpose of contracting with physicians and promoting the use of EvexiPEL's system. This evidence was sufficient to show Rouzier's communications were made while he was primarily engaged in the business of selling goods or services. *See id*.

Rouzier additionally argues that BioTE failed to show his communications were made to his own actual or potential customers. Rouzier asserts he was an independent contractor and was not trying to promote his own practice or otherwise sign up customers for himself. In making this argument, Rouzier relies heavily on the case of *Toth v. Sears Home Improvement Products, Inc.*, 557 S.W.3d 142 (Tex. App.—Houston [14th Dist.] 2018, no pet.). As we stated in *Forget About*

*It*, we do not find *Toth* instructive under the facts presented here. *See Forget About It*, 2019 WL 3798180, at * 7.

In *Toth*, the court held that the commercial speech exemption did not apply to an independent contractor's communications about a product he did not represent, manufactured by a company for which he did not work in any capacity. *Toth*, 557 S.W.3d at 155–56. The court concluded that the defendant's communications were merely about a good in the marketplace and not made in his capacity as a seller of that good or in an effort to market his own services *in competition with* the company for which he worked as an independent contractor. *Id*. In contrast, Rouzier's communications were alleged to promote use of the hormone replacement therapy system made by the company for which he worked as both a faculty member and medical advisor. The commercial speech exemption applies not only to business pursuits for oneself, but also when the business for which one works stands to profit from the statements at issue. *Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *8 (Tex. App.—Dallas, May 15, 2019, no pet.) (mem. op.). After reviewing the record under the applicable standard, we conclude BioTE met its burden to show that the commercial speech exemption applied to Rouzier's alleged communications with medical providers.

Based on the foregoing, the trial court did not err in denying Rouzier's motion to dismiss because either the TCPA did not apply to the communications at issue or the communications were exempted from the TCPA as commercial speech. We resolve Rouzier's first two issues against him. Because of our resolution of these issues, it is unnecessary for us to address Rouzier's remaining issues.

We affirm the trial court's order.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

190277F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NEAL ROUZIER, M.D., Appellant

No. 05-19-00277-CV     V.

BIOTE MEDICAL, LLC, Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-18-09135.
Opinion delivered by Justice Reichek. Justices Pedersen, III and Carlyle participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the motion to dismiss filed by appellant NEAL ROUZIER, M.D. is **AFFIRMED**.

It is **ORDERED** that appellee BIOTE MEDICAL, LLC recover its costs of this appeal from appellant NEAL ROUZIER, M.D.

Judgment entered November 22, 2019